**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-CV-22665-DPG

FLORIDA FAIR HOUSING ALLIANCE, INC.,

    **Plaintiff**,

v.

THE PALM GRAND, LLC,

    **Defendant**.

_____/

### **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Florida Fair Housing Alliance, Inc. (the "FFH Alliance" or "Plaintiff") sues Defendant The Palm Grand, LLC ("Defendant"), **under a theory of disparate-impact liability**, for violating 42 U.S.C. § 3601 *et seq.*, the Fair Housing Act.

### **INTRODUCTION**

1.    Despite making up *less than* **one-third (29%)** of the total U.S. population, Black and Hispanic individuals represent *more than* **half (58%)** of the individuals convicted of any felony. In light of this dystopian reality, the screening practices Defendant directs at individuals it (Defendant) *suspects* to have been convicted of *any felony* has a **disparate impact** on Black and Hispanic individuals.

2.    As confirmed by FFH Alliance's investigation of Defendant on May 06, 2020, Defendant has erected arbitrary, unnecessary, and otherwise hidden, barriers to housing that have an unjustifiable disparate impact on Black and Hispanic individuals. In short, the screening practices Defendant directs at individuals it (Defendant) *so much as suspects as have any felony* conviction has a disparate impact on Black and Hispanics individuals because, despite making up

less than one-third of the population, Black and Hispanic represent *more than half* of all those convicted of any felony.

3. Yet, make no mistake, Plaintiff *is not* attempting to hold Defendant accountable for the **disproportionate criminal prosecution unjustly endured by Black and Hispanic individuals**. Rather, in acknowledgment of such undeniable fact, Plaintiff brings this action to *eliminate* the below-evidenced screening practice of Defendant because, *although facially neutral*, such practice is an unnecessary, arbitrary, and artificial barrier to housing that disproportionately impacts Black and Hispanic individuals.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under 42 U.S.C. § 3613(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

5. Venue in this District is proper because, Plaintiff resides in this District, Defendant transacts business in this District, and the complained conduct of Defendant occurred in this District.

## PARTIES

6. The FFH Alliance is a fair housing advocacy organization and non-profit corporation formed in Florida, and headquartered in Miami-Dade, Florida. The FFH Alliance offers a variety of programs and services designed to advance fair housing in Florida. To advance its mission of ensuring equal access to housing for all, the FFH Alliance engages in education and outreach; provides counseling to individuals facing discrimination; works with local and federal officials to enhance fair housing laws and their enforcement; undertakes investigations to uncover unlawful discrimination; and, when necessary, initiates enforcement actions.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

7. In the eyes of Plaintiff, to combat the perpetuation of segregation and stem the discriminatory impact of needlessly unjust practices, housing providers large and small must evaluate and revise the role that criminal records screening policies and practices play in their application decisions to ensure that they are serving a substantial, legitimate, non-discriminatory interest and are not a proxy for racial discrimination

8. Defendant is a Florida limited liability company, with its principal place of business located in Boca Raton, Florida.

## DEMAND FOR JURY TRIAL

9. Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## ALLEGATIONS

10. Approximately *1.5 million* individuals are currently *serving* a sentence of more than one year, *i.e.*, the *repayment* phrase of a felony-level debt to society, under the jurisdiction of state or federal correctional authorities in the United States. With respect to these individuals' demographics, according to the Bureau of Justice Statistics: **30%** are White, **33%** are Black, and **25%** are Hispanic.[1] In comparison to the demographics of the United States population (the total of which is estimated at 308 million), however, according to the U.S. Census Bureau: **63%** of the population is White, **13%** of the population is Black, **16%** of the population is Hispanic.[2]

11. Despite making up a fractional percentage of the United States population in comparison to Whites, Hispanic individuals, for example, are **three times more likely** to be

---

[1] Bureau of Justice Statistics, U.S. Dep't of Justice, *Prisoners in 2017*, 15 (April 2019), *available at* https://www.bjs.gov/content/pub/pdf/p17.pdf.

[2] U.S. Census Bureau, U.S. Dep't of Commerce, *Overview of Race and Hispanic Origin: 2010*, 6 (March 2011), ***available at*** https://www.census.gov/prod/cen2010/briefs/c2010br-02.pdf.

convicted *and* incarcerated than that of White individuals.³ Thus, in simplest terms, a policy, procedure, or practice that arbitrarily denies, without any consideration, housing to individuals with a felony conviction will *absolutely* have a disparate impact on Black and Hispanic individuals.

12. Pursuant to its mission of ensuring equal access to housing for all, the FFH Alliance began investigating the "Palm Bay Grand" apartment community, located at 145 Cinnamon Cove Drive, Melbourne, Florida 32901 (the "Complex"), for discriminatory housing practices.

13. Defendant is the owner and otherwise landlord of the Complex.

14. On May 06, 2020, the FFH Alliance tested the Complex for unlawful discriminatory housing practices using a field tester.

15. The field tester used by the FFH Alliance to test the Complex ("Field Tester" or "FT") is a *sui juris* Hispanic male with a felony conviction.

16. On May 06, 2020, at approximately 12:16 p.m., FT called the Complex at phone number 321-210-1009. After dialing this number FT was connected to an agent of Defendant, of whom identified herself as "Julia." FT first asked whether rental property was available, to which Defendant responded, without hesitation, a one-bedroom apartment was available (the "Dwelling"). FT then asked whether his (FT's) rental application would be denied due to FT's record felony conviction, to which Defendant retorted: "***yes you would***."

17. Defendant's response to FT regarding convicted-felon applicants demonstrates that Defendant directs individuals convicted of a felony, *the majority of which are disproportionately Black and Hispanic*, away from both the Dwelling and the Complex.

18. Defendant did not perform any investigation or inquiry into the felony conviction had by FT. For example, Defendant did not inquire into the type of felony, the date of conviction,

---

³ *Supra* at FN. 5.

the nature of the conviction, let alone the circumstances surrounding the felony conviction had by FT. Defendant simply identified FT as an individual with a felony conviction, and without any inquiry or investigation, chose to deter FT from renting the property Defendant held open to the public due to FT's record felony conviction.

19. The statements made by Defendant to FT regarding applicants previously convicted of a felony further serves to discourage Black and Hispanic individuals with a criminal record from applying, inspecting, and renting the Dwelling, and otherwise restricts the choices of these individuals in connection with attempts to seek, negotiate for, and ultimately rent the Dwelling.

20. Consistent with the FFH Alliance's suspicion, *that is*, until such suspicion was *confirmed* on May 06, 2020, Defendant, whether intentionally or ignorantly, perpetuates segregated housing patterns and discourages and/or obstructs choices in the applicable community, neighborhood, and/or development.

21. Simply put, Defendant's decision to steer individuals convicted of *any* felony away from the Complex and/or Dwelling, *i.e.*, *to flat out tell FT that individuals convicted of a felony are not accepted*, all without conducting even the most minimal inquiry into such an individual's circumstances, has a disparate impact on Black and Hispanic individuals.

22. The harm inflicted by discriminatory practices and/or policies directed at individuals with criminal records, like those of Defendant, is significant, not only in terms of the sheer number of people affected, but also in terms of the consequences for the wellbeing of our communities. In fact, securing safe and affordable housing is a particularly crucial need for individuals reentering their communities immediately after time in prison.

23. Research shows that success in finding adequate housing is critically important to allowing reentrants to secure employment, government benefits, and other community ties.

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

Housing has been characterized, properly, as the "lynchpin that holds the reintegration process together."[4]

24. As another expert put it, "[t]he search for permanent, sustainable housing portends success or failure for the entire reintegration process."[5]

25. On April 4, 2016, more than four years ago, the U.S. Department of Housing and Urban Development ("HUD") issued a document titled "*Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions*" (the "HUD Guidance").

26. The HUD Guidance noted that "criminal history-based restrictions on access to housing are likely disproportionately to burden African Americans and Hispanics." Id. HUD found that "where a policy or practice that restricts access to housing on the basis of criminal background has a disparate impact on individuals of a particular race … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider." See HUD Guidance.

27. Ultimately, HUD concluded that "**a discriminatory effect resulting from a policy or practice that denies housing to anyone with a prior arrest or any kind of criminal conviction cannot be justified, and therefore such a practice would violate the Fair Housing Act**." Id. (emphasis added).

28. Further, HUD made clear that no substantial, legitimate, nondiscriminatory interest can be served where "[a] housing provider … imposes a blanket prohibition on any person with

---

[4] Jeremy Travis, *But They All Come Back: Facing Challenges of Prisoner Reentry* 219 (2005).
[5] Barbara H. Zaitzow, *We've Come a Long Way, Baby...Or Have We? Challenges and Opportunities for Incarcerated Women to Overcome Reentry Barriers* 233 (in Global Perspectives on Re-Entry (2011)).

any conviction record – no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then." Id. The FFH Alliance finds the same.

29. According to recent data, studies, and HUD findings, Hispanic and Black people are arrested, convicted, and imprisoned at vastly disproportionate in country as a whole, of which is consistent within the State of Florida. As such, the discriminatory steering practices of Defendant, those the above-transcribed interaction between Defendant and FT exemplifies, actually and predictably results in a disparate impact to Hispanic and Black people.

30. Defendant's practice or otherwise policy regarding the criminal history of individuals seeking to rent, utilize, or otherwise occupy the Dwelling is unlawful under the Fair Housing Act, as it has a disparate impact on Black and Hispanic individuals and otherwise fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

31. Defendant's acts impaired the FFH Alliance's ability to engage in projects by forcing the FFH Alliance to devote resources to counteract the herein complained of actions of Defendant. Further, the resources diverted are independent of the cost of detecting and challenging, *via* non-legal means, the alleged misconduct of Defendant. Simply put, the FFH Alliance was forced to divert resources from, *among other things,* its counseling, outreach, and educational efforts, and into the advancement of this litigation to protect the FFH Alliance's core mission.

32. Despite the prelitigation efforts of the FFH Alliance, Defendant refuses to evaluate and revise the role that criminal records, or more pointedly, the mere suspicion of a felony conviction, play in Defendant's screening policies and practices to ensure that Defendant is not perpetuating segregation and otherwise needlessly erecting barriers to housing.

33. Consistent with FFH Alliance's fair housing testing efforts, FFH Alliance has a practice of continuing to monitor and test those entities and individuals found to have been engaged

in discriminatory housing practices. FFH Alliance's will continue monitoring Defendant, and its agents, in order to determine its (Defendant's) ongoing compliance with the Fair Housing Act.

## DISPARATE IMPACT LIABILITY[6]

34. Inclusive Communities represents the Supreme Court's codification of disparate impact liability under the FHA. 135 S. Ct. 2507 at 2525 ("The Court holds that disparate-impact claims are cognizable under the Fair Housing Act upon considering its results-oriented language, the Court's interpretation of similar language in Title VII and the ADEA, Congress' ratification of disparate-impact claims in 1988 against the backdrop of the unanimous view of nine Courts of Appeals, and the statutory purpose."). With respect to the facts at play in Inclusive Communities, however, the Supreme Court was keen to exemplify that such were not that of a "heartland" disparate impact case. Inclusive Communities at 2525 (wherein the Supreme Court made clear, "[u]nlike the heartland of disparate-impact suits targeting artificial barriers to housing, the underlying dispute in this case involves a novel theory of liability.").

35. Despite the ill-suited factual circumstances of Inclusive Communities, the Supreme Court made clear that "[a] plaintiff who fails to *allege facts at the pleading stage* **or** *produce statistical evidence* demonstrating a causal connection cannot make out a prima facie case of disparate impact." Inclusive Communities, 135 S. Ct. 2507 at 2524 (emphasis added). Id. at 2524 (exemplifying that a plaintiff must demonstrate, whether *via* **allegations** *or* **statistical evidence**, a "causal connection" between the specific adverse racial or ethnic disparity and the challenged policy). In the vein of meeting the "robust causality" pleading requirement, though, the Supreme Court noted the limitations of statistical evidence. Inclusive Communities at 2522 ("[b]ut

---

[6] The following is proffered in light of Defendant's Motion to Dismiss [D.E. 6], or more pointedly, the argument therein with respect to the sufficiency of Plaintiff's claim, so that the precious resources of both Plaintiff and this Court are preserved for meritorious challenges.

disparate-impact liability has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA, **for instance**, *if such liability were imposed based solely on a showing of a statistical disparity*." (emphasis added)),

36. In simple terms, under Inclusive Communities, statistical evidence is simply *one* of the tools used to establish the *robust causality* component of the overarching *prima facie* case – **but make no mistake** – Plaintiff is not claiming statistical information is unhelpful or useless in the context of a disparate impact claim.[7] Rather, Plaintiff wants to make clear: Inclusive Communities *does not* make the provision of statistical evidence a necessary component of a *prima facie* case of disparate impact. *See, e.g.,* Corelogic Rental Prop. Sols., LLC, 369 F. Supp. 3d 362 at 379 (rejecting the defendant's argument that the plaintiffs' "disparate impact claim fails because it is not supported by statistical evidence," and doing so, recognizing that, although statistical evidence "**is not required**," the plaintiffs had offered "statistical support for their claims." (emphasis added)).

37. In the context of the "robust causality requirement" set by Inclusive Communities, in Oviedo Town Ctr. II, L.L.L.P. v. Ciy of Oviedo, the Eleventh Circuit observed that, "[a]lthough [the Supreme Court] left space for the lower courts to elaborate on what could meet this causality requirement, the Court was crystal clear that some allegations would fall far short: 'a plaintiff who fails to allege **facts at the pleading stage** *or* **produce statistical evidence** demonstrating a causal connection cannot make out a prima facie case of disparate impact.'" 759 F. App'x 828, 834 (11th

---

[7] To the contrary, **in the vein of utility**, and although Inclusive Communities *does not* make the provision of statistical evidence a *necessary* component of a *prima facie* case of disparate impact, Plaintiff offers statistical information to crystalize *why* Defendant's practice regarding individuals it *suspects* to have been convicted of a felony has a disparate impact of Black and Hispanic individuals. *See* Supra at ¶¶ 10-11.

PAGE | **9** of 13

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

Cir. 2018) (emphasis added) (*citing* Inclusive Communities at 2523). More pointedly, the Oviedo court further stated:

> Even before the Supreme Court spoke to this question, this Court had arrived at similar conclusions, entirely consistent with Inclusive Communities, about the need for a relevant statistical showing in order to support a disparate-impact claim under the FHA, in [Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008)]. There, the plaintiff, who operated halfway houses for recovering substance abusers in the City of Treasure Island, Florida, had been cited by the City for violating a zoning ordinance that limited occupancy turnover. Id. at 1205. He sued the city under the FHA, alleging, among other things, that the zoning ordinance had a disparate impact on the rights of the disabled (the recovering substance abusers). Id. **The claim failed because the plaintiff provided no comparative data to support his prima facie case**. Id. at 1217-18. We held that in order to show disparate impact, **the plaintiff must provide evidence comparing members of the protected class affected by the ordinance with non-members affected by the ordinance**. *See* Id. at 1217. If the percentage of members of the protected class (recovering substance abusers) affected was higher than the percentage of nonmembers impacted, **this disproportionality could form the basis for a prima facie case of disparate impact**. The plaintiff in Schwarz had failed to provide an adequate statistical foundation because he presented "no comparative data at all," but instead simply offered what we termed a "bald assumption" that the ordinance's effect on his houses meant that the handicapped had necessarily been disparately impacted. Id. at 1218.

Oviedo at 834-35.

38.     In terms of achieving the "robust causality" pleading requirement, Oviedo and Schwartz exemplify the threshold as the proffering of "evidence comparing members of the protected class affected by the [alleged discriminatory practice] with non-members affected by the [alleged discriminatory practice]." Oviedo at 835. Objectively, Plaintiff has met this threshold. *Supra* at ¶¶ 10-11.

39.     Simply put, due to the documented racial disparity in the criminal legal system, Defendant's above-discussed prohibition on applicants with a felony conviction, by extension, disproportionately limits the housing opportunities of Hispanic and Black applicants in

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

comparison to White applicants, and in so doing, violates the Fair Housing Act*s. See* <u>Sams v. GA W. Gate, LLC</u>, 2017 U.S. Dist. LEXIS 13168, at *12-14 (S.D. Ga. Jan. 30, 2017) (denying motion to dismiss, concluding "that Plaintiffs have proffered sufficient evidence to survive a motion to dismiss. Plaintiffs have provided evidence that African Americans are twice as likely to have criminal convictions as are caucasians. Plaintiffs have also alleged that in 2014, African Americans represented 36% of the prison population in the United States but only 12% of the country's total population. As a result, Plaintiffs argue that Defendants' 99-year criminal history policy adversely affects African Americans because it adversely applies to Defendants' African American tenants. This is sufficient to avoid a motion to dismiss." (citations omitted)).

### *COUNT I.* <br> VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. § 3604(d)

40. Plaintiff, the FFH Alliance, incorporates by reference paragraphs 1-39 of this First Amended Complaint as though fully stated herein.

41. Defendant is liable to Plaintiff for all injuries caused by the Fair Housing Act violations committed by Defendant and the agents of Defendant.

42. Defendant authorized its agents to act for it (Defendant) when Defendant's agents committed the Fair Housing Act violations alleged herein. The agents of Defendant accepted the undertaking of acting on behalf of Defendant when they (Defendant's agents) committed the Fair Housing Act violations alleged herein. Defendant had control over its (Defendant's) agents when said agents committed the Fair Housing Act violations alleged herein.

43. Here, Defendant's practice of, without any review or investigation, turning away individuals with (or merely suspected of having) a felony criminal record is an arbitrary and artificial barrier to housing, the likes of which is unnecessary to achieve a valid interest or legitimate objective.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

44. A robust causal link exists between Defendant's discussed practice of denying and/or steering away individuals it *suspects* to have been convicted of a felony and the disparate impact on Black and Hispanic people, as Black and Hispanic individuals are disproportionally more likely to have been convicted of a felony than that of white individuals. Defendant's practice of denying, or otherwise without any review or investigation, turning away prospective individual it merely *thinks* was previously convicted of a felony has a direct, disproportionate discriminatory effect on Black and Hispanic individuals.

45. Defendant has violated the Fair Housing Act by, *inter alia*, making unavailable and/or otherwise denying the Dwelling to individuals on the basis of race and/or criminal record.

46. FFH Alliance has been aggrieved, harmed, and its (the FFH Alliance's) goal otherwise thwarted, by above-exemplified latent discriminatory hurdle Defendant perpetuates – of which Defendant continues to practice despite such practices being explicitly condemned by HUD. *See* HUD Guidance (wherein HUD concluded that "a discriminatory effect resulting from a policy or practice that denies housing to anyone with a prior arrest or any kind of criminal conviction cannot be justified, and therefore such a practice would violate the Fair Housing Act.").

47. The FFH Alliance, having uncovered Defendant's latent discriminatory practice and/or policy – has suffered damages in light of the FFH Alliance's goals, purpose, and ongoing monitoring efforts. Further, due to Defendant's conduct, the FFH Alliance's has suffered, is continuing to suffer, and will in the future suffer, irreparable loss and injury and a real and immediate threat of future discrimination by Defendant.

48. WHEREFORE, Plaintiff FFH Alliance, respectfully, requests that this Court:

   (a) Declare the above-mentioned actions, practices, omissions, polices, and procedures, of Defendant to be in violation of the Fair Housing Act;

   (b) Award damages to Plaintiff against Defendant;

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

(c) Enter a permanent injunction enjoining Defendant from using the steering practices complained of herein;

(d) Enter a permanent injunction compelling Defendant to amend its (Defendant's) polices, Procedures, and practices, that have a disparaging impact on Black and Hispanic individuals;

(e) Award Plaintiff costs and reasonable attorneys' fees; and

(f) Any other relief that this Court deems appropriate and just under the circumstances.

DATED: August 10, 2020

Respectfully Submitted,

 /s/ Thomas Patti
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:    jibrael@jibraellaw.com
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377
E-mail:    tom@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:    954-907-1136
Fax:       855-529-9540

*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 10, 2020, the forgoing was electronically via the Court's CM/ECF system on all counsel of record.

 /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377